IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

LANA ODETTA GREEN,            )    CIVIL ACTION NO. 9:14-2195-BHH-BM
                                   )
          Plaintiff,         )
                                   )
v.                           )    **REPORT AND RECOMMENDATION**
                                 )
CAROLYN W. COLVIN,         )
COMMISSIONER OF SOCIAL     )
SECURITY ADMINISTRATION,   )
                                 )
         Defendant.      )
_____)

Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Supplemental Security Income (SSI) on June 7, 2011, alleging

disability beginning February 1, 2007 due to degenerative disc disease, spondylosis, panic attacks

and anxiety, high blood pressure, and gastrointestinal problems. (R.pp. 125-131, 154). Plaintiff's

claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before

an Administrative Law Judge (ALJ), which was held on November 29, 2012. (R.pp. 28-57). The

ALJ thereafter denied Plaintiff's claim in a decision issued December 28, 2012. (R.pp. 11-17). The

Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the

determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that



there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further proceedings or for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v.

2



Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-one (41) years old when she alleges she became disabled, has a ninth grade education and past relevant work experience as a cashier and an office manager.  (R.pp. 48-49, 58, 154-155).  In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of cervicolumbar degenerative disc disease with disc bulge at L4-5, and proctitis,[2] thereby rendering her unable to perform her past relevant work,[3] she nevertheless retained the residual functional capacity (RFC) to perform a restricted range of sedentary work,[4] and was therefore not entitled to disability benefits.  (R.pp. 13,

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2]Inflammation of the lining of the rectum.  http://www.mayoclinic.org/diseases-conditions/proctitis/basics/definition/con-20027855.  June 12, 2012.

[3]Plaintiff's past relevant work, which included having to load and unload material, was defined as "heavy" work.  (R.p. 16).  "Heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."  20 C.F.R. § 416.967(d).

[4]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out
(continued...)



16-17).

Plaintiff asserts that in reaching her decision, the ALJ erred by failing to specify the frequency of the need for Plaintiff to change position when restricting her to a job that required a sit-stand option, by failing to properly consider how Plaintiff's gastrointestinal impairment affects her RFC, by failing to adequately explain how allowing Plaintiff a sit-stand option accounts for her cervicolumbar degenerative disc disease, by failing to account for Plaintiff's sweet's syndrome[5] in assessing her RFC, and by failing to properly consider and evaluate Plaintiff's subjective testimony as to the extent of her pain and limitations. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical History)

Plaintiff's medical records reflect that on January 8, 2010[6] Plaintiff was seen in the ER at University Hospital. Although this medical record does not indicate what Plaintiff went to the

---

[4](...continued)
job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[5]A rare skin condition marked by fever and painful skin lesions that appear mainly on arms, neck, face and back. http://www.mayoclinic.org/diseases-conditions/sweets-syndrome/basics/definition/con-20025217, December 13, 2012.

[6]Although Plaintiff asserts that she has been disabled since February 1, 2007, neither party cites to any medical evidence predating 2010.



ER for, it was apparently for chest pains, as it was noted that she had a "negative cardiac work up". Plaintiff was noted to be ambulatory and "comfortable". On examination it was noted that Plaintiff "does not appear acutely ill", she had no abnormal pulmonary findings, her abdomen was noted to be "soft and non-tender to palpation" with normal bowel sounds, while musculoskeletally she had full range of motion in all of her extremities with no edema. (R.pp. 464-465).

   Plaintiff thereafter returned to the hospital ER on January 17, 2010, complaining of shortness of breath, a headache, leg pains and full body aches, and "numerous other complaints". Mentally Plaintiff was noted to be alert and oriented x3, and she had a steady, coordinated gait. Her pulmonary findings were normal on examination, and although she had an irregular heart rate, her pulse was regular and she had no complaint of chest pain. Abdominal examination revealed her abdomen to be soft, non-distended, and mildly tender in the right upper quadrant, she had no audible bowel sounds, no complaints of nausea, vomiting, diarrhea or constipation, and she was able to empty her bladder without dysuria and with no complaints of frequency or urgency. She also had intact range of motion in all of her extremities, with no muscle weakness. Plaintiff was diagnosed with abdominal pain. (R.pp. 466-469).

   On January 25, 2010 Plaintiff was seen by Dr. Gary Fischbach to establish a patient relationship. On presentation Plaintiff complained of chronic back pain. On examination Plaintiff was found to be well developed, well nourished and in no acute distress, there was no indication of any abnormal respiratory or cardiac findings, nor was there any indiction of any other abnormal findings, other than a notation that reads "spot on liver (?)". (R.pp. 433-434).

   On February 5, 2010 Plaintiff had a lumbar MRI which showed normal boney alignment and normal marrow signal with no evidence of a congenital abnormally of the spine, the



visualized paraspinal soft tissues were unremarkable, while images of the hips, sacroiliac joints, piriformas muscles and proximal sciatica nerves revealed no abnormality. There was "mild" multilevel spondylosis, and a vestibule hemangioma identified in T10, but there was no evidence of protrusion of material into the canal and the distal spinal cord and conus medullaris appeared normal. No root compression was identified in the intervertebral disc, with only some mild bulge of disc material at L3-4 and L4-5. (R.pp. 706-708).

On May 27, 2010 Plaintiff was seen by Dr. William Durrett for a pain management followup. On examination Plaintiff's vital signs were stable, her chest was clear to auscultation, her heart had a regular rate and rhythm, and she had positive straight leg raise right and left at 35-40 degrees, with a decreased pinprick right and left at L4 - L5. Plaintiff was provided with a steroid injection. (R.p. 453).

On May 30, 2010 Plaintiff returned to the ER complaining of persistent back pain since receiving the epidural steroid injection four days before. Plaintiff also complained of a headache, light headedness, and nausea. While Plaintiff complained of "shooting" pain, she had no numbness or weakness in her legs. She also had no bowel or bladder incontinence. Mentally, she was noted to be alert and oriented x3. It was also observed that Plaintiff walked without difficulty, but with a slow and steady gait due to complaints of back pain. There were no pulmonary or cardiac or abdominal abnormalities noted. Plaintiff was able to empty her bladder without dysuria, and she had no complaint of frequency or urgency. She also had a normal lower extremity exam without tenderness or edema noted. (R.pp. 473-478).

On June 1, 2010 Plaintiff told Dr. Richard Eisenberg that injection therapy had not been useful and was exquisitely painful for her. (R.p. 441).

6



On June 9, 2010, Plaintiff was back in the ER for a hypertension evaluation, apparently due to her having a headache. She had no palpations or chest pain at that time. On examination Plaintiff was noted to have a normal mood and affect, she had full range of motion in all extremities with no tenderness, she had a regular heart rate and rhythm, and her abdomen was soft and non-tender to palpation. Neurologically she had no motor or sensory deficit, and she had normal symmetric muscle strength and tone, normal reflexes, and a normal gait and body control. Plaintiff's medication regimen was reviewed, and she was given discharge instructions about the possible causes of headaches. (R.pp. 481-485).

On June 18, 2010 it was noted that Plaintiff's lower back and leg pain were much improved following an epidermal, although Plaintiff was still complaining of multiple athralgic and myalgia-type complaints relating to her neck, posterior shoulders, and upper back. On examination Plaintiff's chest was clear to auscultation, she had a regular heart rate and rhythm, she had no motor or sensory changes in either her upper or lower extremities, she had negative straight leg raise bilaterally, and "minimal" tenderness of the posterior elements lumbar. (R.p. 452).

On July 12, 2010, Plaintiff was seen by Dr. Richard Chesser about lesions on her arms. On examination Plaintiff was found to have annular erythematous plaques on her arms, and she was assessed with "sweets v. annular elastolytic granuloma v. sarcoid v. other". (R.p. 709). A biopsy was performed, following which Sweets Syndrom was apparently diagnosed. (R.p. 711).

On August 13, 2010, Plaintiff returned to see Dr. Durrett complaining of increased right SI area pain and posterior hip pain. Plaintiff was provided with an injection. (R.p. 450). On August 17, 2010, Plaintiff presented to Dr. Eisenberg complaining that she felt worse since Dr. Durrett had given her the injection. On examination Plaintiff was able to "strongly" move her upper



extremities, while she was able to move her lower extremities against resistance proximately and distally but there was some decreased motion with a pain component.  It was noted that Plaintiff walked with a "significant antalgic gait".  Dr. Eisenberg continued her prescription for Percocet. (R.p. 440).

On August 19, 2010, Plaintiff was seen at MGC Health complaining of three days nausea and general body weakness.  Plaintiff had some lab tests performed, her medication regimen was reviewed, and she was discharged ambulatory in good condition. (R.p. 364).  On September 3, 2010, Plaintiff returned to see Dr. Durrett for a pain management followup, where it was noted that she had decreased SI area pain and lumbar back pain and that her condition was overall improved. Plaintiff's vital signs were stable, her chest was clear to auscultation, she had a regular heart rate and rhythm, negative Patrick's Maneuver,[7] and only "minimal" tenderness of the posterior elements lumbar or the SI joints to palpation.  (R.p. 449).

On September 13, 2010, Plaintiff was seen at the Medical College of Georgia for complaints of abdominal pain and a headache.  Few objective findings were noted. (R.pp. 414-415). She was thereafter seen again on October 7, 2010 at MGC Health, where she had CTs taken of her abdomen and pelvis.  An MRI of the abdomen found no acute process in the chest, Plaintiff's bowel was normal, and there were generally no other abnormalities noted except that the liver demonstrated patchy and linear areas of hypodensity with interspersed hyperdensity involving the right lobe.  The impression was that this might represent a healing traumatic injury/hepatic laceration.  Some

---

[7]The Patrick's Test is a physical examination test to determine the presence of sacroiliac joint dysfunction in patients with lower back pain.  http://centenoschultz.com/patricks-test-evaluation-of-sacroillac-joint-dysfunction, March 30, 2009.



followup was recommended.  (R.pp. 339-341).

Plaintiff was seen back at the Medical College of Georgia on October 11, 2010 complaining of increased abdominal pain, worse since her visit on October 7, 2010.  However, a physical examination was essentially normal except for a tender and distended abdomen.  Plaintiff was released with instructions to take her GI medications as prescribed and to keep a scheduled endoscopy appointment on October 21, 2010.  (R.pp. 310-312).  Plaintiff thereafter had a colonoscopy on October 27, 2010, with the quality of Plaintiff's preparation for the procedure being noted as "very poor".  A single polyp was found, otherwise there were no obstructive lesions seen and the colonic muscosa appeared grossly normal. (R.pp. 301-302).  Plaintiff was seen back at GMC health on November 13, 2010 complaining of chills and fever as well as abdominal pain.  It was noted that Plaintiff had recently had a colonoscopy, and she was advised to treat her fever with Tylenol and Motrin and that she should follow up with GI medicine.  (R.pp. 237-240).

On April 14, 2011, Plaintiff was seen by Dr. Eric Schlueter (to establish as a new patient).  On review of systems Plaintiff advised that she was not feeling tired or poorly, she had no chest pain or discomfort, and no shortness of breath.  She further advised that she was experiencing no diarrhea or constipation and had no genitourinary problems.  On examination Plaintiff had no abnormal lung or cardiovascular findings, while psychiatrically she had an appropriate mood and effect.  (R.pp. 425-429).

On April 19, 2011, Plaintiff was seen by Dr. Durrett for pain management followup, where she complained of an increased right and left SI area pain and posterior hip pain.  Physical examination was normal other than positive tenderness of the right and left SI joints to palpation.  Plaintiff was given an injection.  (R.p. 445).  At a followup on May 17, 2011, Plaintiff reported



"much decreased lumbar back pain". Plaintiff did say that she had a rash on her arm that she said was caused by the steriod injection. Dr. Durrett's examination was again normal other than with respect to "minimal" tenderness to the posterior elements or the SI joints. (R.p. 444).

On May 31, 2011, Plaintiff was seen in the University Hospital ER complaining of cramping and a "squeezing" sensation in her chest. It was noted that Plaintiff denied any urinary frequency, urgency or pain, that she was having normal bowel movements, and that her pain was "mild and did not significantly alter [Plaintiff's] daily routine". (R.p. 492). Mentally Plaintiff was noted to be alert and oriented x3, she had normal blood pressure with no complaint of chest pain at that time with her pulmonary and cardiac assessments being essentially normal, she had intact range of motion in all of her extremities with no muscle weakness, and she was able to empty her bladder without dysuria and had no complaints of frequency or urgency. While Plaintiff complained of generalized abdominal tenderness, her abdomen was noted on examination to be soft, non-distended and non-tender, she had audible bowel sounds, and no complaint of nausea, vomiting, diarrhea or constipation. Plaintiff was discharged. (R.pp. 494-497). Plaintiff was also seen on that same date by Dr. Eisenberg, who assessed her with chronic back pain with history of lumbar degenerative disease, which he noted had been "handled conservatively". (R.p. 439). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [generally conservative treatment not consistent with allegations of disability].

Plaintiff returned again to the Medical College of Georgia on June 5, 2011 complaining of back pain. Next to a section for noting "other" complaints, the admission sheet also states "panic attacks". On system review Plaintiff also complained dypsnea, constipation and incontinence, and "numbness" and "tingling". (R.p. 210). X-rays were taken of Plaintiff's lumbar



and thoracic spine, which were generally normal with no significant findings other than multilevel spondylosis and degenerative disc disease within the lower cervical spine with disc ostephyte complexes at C3-C4, C4-C5, and C5-C6, most prominent at the C4-C5 level. There was also a small central disc protrusion at L3-L4 without significant central canal or neuroforaminal stenosis. (R.pp. 222-226). Plaintiff was provided with some medications, and advised to rest her back for a couple of days using heat for comfort. (R.p. 209).

Plaintiff returned to see Dr. Durrett on June 14, 2011 for pain management followup, at which time Plaintiff reported that he was experiencing "minimal" posterior neck pain, shoulder pain, or lumbar back pain at that time. Physical examination was essentially normal, with only "minimal" tenderness of the posterior elements cervical or lumbar or the SI joints being noted. Dr. Durrett opined that Plaintiff's sacroiliitis and lumbar back pain was "much improved". (R.p. 443). When Plaintiff returned to see Dr. Durrett on August 9, 2011, she was noted to be "doing well" with only "minimal" pain. Examination findings were also again minimal. (R.p. 442). See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions].

On October 6, 2011, state agency physician Dr. Jim Liao completed a Physical Residual Functional Capacity Assessment for the Plaintiff in which he opined that Plaintiff had the RFC for light work[8] with the ability to stand and/or walk (with normal breaks) for a total of about six hours in an eight hour work day, and sit (with normal breaks) for a total of about six hours in an eight hour work day, and that Plaintiff had an unlimited ability to push and/or pull. Dr. Liao further

---

[8]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations, while posturally Plaintiff could frequently climb ramps and stairs and balance, could occasionally stoop, kneel, crouch and crawl, but never climb ladders/ropes/scaffolds. (R.pp. 64-66). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

When Plaintiff was seen by Dr. Durrett for a pain management followup on November 7, 2011, examination findings were unchanged except that Plaintiff had an upper respiratory tract infection at that time. (R.p. 572).

On December 6, 2011, state agency physician Dr. Lindsey Crumlin completed a Physical Residual Functional Capacity Assessment for the Plaintiff in which she reached the same conclusions with respect to Plaintiff's RFC as had Dr. Liao. (R.pp. 75-78).

On February 6, 2012, Dr. Durrett wrote that Plaintiff was still having lower and upper back and posterior neck pain. (R.p. 570). On March 20, 2012, Plaintiff's examination findings were unchanged, and Dr. Durrett indicated that he was going to restart Plaintiff's injective therapy once her insurance coverage got restarted. (R.p. 569).

On May 21, 2012, Plaintiff was seen at the University Hospital ER complaining of chest pains. Plaintiff was noted to be alert and oriented x3, she was in no acute respiratory distress, her lungs were clear with bilateral breath sounds equally, she had normal blood pressure and a regular cardiac rate and rhythm, she had a normal lower extremity exam without edema or tenderness, her abdomen was non-tender and non-distended with no complaints of nausea, vomiting, diarrhea or constipation, and she was able to empty her bladder without dysuria and had no complaints of frequency or urgency. (R.pp. 578-583).



On May 24, 2012, Plaintiff was back at the University Hospital ER, this time complaining of "flank" pain. Review of systems and physical examination were essentially normal. Plaintiff was advised that flank pain "can be caused by many things", and was discharged with instructions. (R.pp. 588-591).

On August 22, 2012 Plaintiff was seen by Dr. Frederic Woriax, apparently seeking some medications for the purpose of establishing patient care. Plaintiff was noted to be oriented to time, place and person, in no acute distress, her lungs were clear to auscultation and had a normal rhythm, she had normal cardiovascular findings, abdominal auscultation revealed no abnormalities, and motor examination demonstrated no dysfunction. (R.p. 647).

On October 2, 2012, Plaintiff was seen at MGC Health for complaints of pain radiating down her arms. Examination findings were essentially normal. (R.pp. 651-652). Plaintiff was given a stress echocardiogram which reflected an ejection fraction of sixty-eight percent, other findings essentially normal. (R.p. 656).

On November 18, 2012, Plaintiff was seen at the University Hospital ER complaining of heavy rectal bleeding. (R.p. 717). The nursing assessment was essentially normal other than a tender lower abdominal area. Plaintiff was able to empty her bladder without dysuria and she had no complaints of frequency or urgency. (R.p. 719). On physical examination Plaintiff's bowel sounds were normal, and her stool guaiac was negative. (R.p. 720). Plaintiff was discharged in stable condition.

## II.

### (Sit/Stand Option)

Plaintiff initially argues that the ALJ erred in her decision because she failed to



specify the frequency of the need for Plaintiff to change position when restricting her to a job that required a sit/stand option, and by failing to adequately explain how allowing Plaintiff a sit/stand option accounts for her cervical lumbar degenerative disc disease.  This argument is without merit.

   After review of the record and evidence in this case, the ALJ determined that notwithstanding her impairments, Plaintiff had the RFC for at least sedentary work, meaning  work that required her to lift no more than ten pounds at a time, and which involves sitting with walking and standing being required occasionally.  20 C.F.R. § 404.1567(a)(2005).  The ALJ also further restricted Plaintiff to performing jobs where she would have the ability to shift position from sitting to standing at her work station at will throughout the workday.  (R.p. 13).  Plaintiff argues, however, that the ALJ committed error in her RFC finding because she failed to set forth the frequency of the need for Plaintiff to alternate sitting and standing and the length of time she would need to stand, citing to SSR 96-9p.  However, no greater specificity was required in the ALJ's RFC finding for the simple reason that the ALJ restricted Plaintiff to working jobs where she could sit or stand "at will", meaning that she could sit down or stand up whenever she wanted to for however long she wanted to without restriction.  Hence, no further description of how long Plaintiff would be required to sit or stand was required.  See Pierpaoli v. Astrue, No. 10-2407, 2012 WL 265023, at * 3 (D.S.C. Jan. 30, 2012) [Rejecting claim of error where ALJ did not specify the frequency of the need for Plaintiff to sit or stand because an at-will sit/stand option means that the Plaintiff would have the flexibility to sit or stand as needed]; May v. Colvin, No. 13-1360, 2014 WL 3809500, at * 17 (D.S.C. July 30, 2014).  As noted by Judge Curry in Pierpaoli, numerous case decisions support this conclusion.  Pierpaoli, 2012 WL 265023, at * 3; see also Jimison ex rel. Sims v. Colvin, 513 Fed. Appx. 789, 792 (10th Cir. Mar. 21, 2013) ["We agree with [the Plaintiff] that an ALJ "must be specific as to the



frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185 at * 7 (July 2, 1996). But the ALJ did that here. The option to sit or stand at will permits the claimant to control the frequency at which she alternates positions. No greater specificity would be possible."]; cf. Lopez v. Astrue, No. 10-8024, 2012 WL 1030481 at * 10 (N.D.Ill. Mar. 27, 2012) ["A sit/stand option at will is frequently used in the Seventh Circuit, demonstrating that an 'at will' option is a sufficient specification of frequency of the individual's needs."].

   As for Plaintiff's argument that the ALJ failed to adequately explain how allowing Plaintiff a sit/stand option accounted for her cervicolumbar degenerative disc disease, the exertionary restrictions with associated pain caused by this condition are exactly the types of limitations a sit/stand option at will is designed to address, thereby allowing Plaintiff to adjust her position at will to alleviate pain and stiffness caused by this limitation. Further, even though (as noted by the ALJ in her decision) Plaintiff's objective medical examinations consistently reflected only minimal findings (as is more fully set forth by the ALJ and as discussed herein in Section I, supra, see also, (R.pp. 14-15)), including that Plaintiff consistently displayed no numbness or weakness in her legs and was able to ambulate with a "steady gait" as well as that she generally possessed normal muscle strength and tone with no motor or sensory deficits, in light of the fact that Plaintiff does have degenerative disc disease and a disc bulge at L4-5 which the ALJ found can cause pain on postural exertion, the ALJ not only limited Plaintiff to performing jobs that would allow her to sit and stand at will to accommodate her complaints of lower back pain (including her hearing testimony that she is unable to tolerate walking and would sometimes have to sit down due to pain in her back), but she further restricted Plaintiff to jobs where posturally she would never be required to climb ladders/ropes/scaffolding, and only occasionally have to stoop, kneel, crouch, crawl, or climb ramps



or stairs. (R.p. 13). See (R.pp. 15, 34-35). These limitations account for the findings reflected in Plaintiff's medical examinations and diagnostic studies showing that her degenerative disc disease was not substantially limiting, together with Plaintiff's associated complaints of pain caused by her condition. Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8ʰ Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

        In sum, the medical records from Plaintiff's treating and examining medical providers provide  ample support for the RFC findings in the decision. Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; see also Thomas v. Celebreeze, 331 F.2d 541, 543 (4ᵗʰ Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]. Significantly, Plaintiff has pointed to nowhere in the medical evidence where any of her treating or examining physicians over the years has ever opined that she is disabled from all work activity. Goodwater v. Barnhart, 579 F.Supp. 746, 757 (D.S.C. 2007)[Noting no physician ever opined that Plaintiff was disabled]; Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)[Finding that where no physician opined that Plaintiff was totally and permanently disabled supported a finding of no disability]. Indeed, it is readily apparent that the ALJ gave Plaintiff every benefit of the doubt by assigning her an RFC even *more* restrictive than the light work RFC opined to by both of the state agency physicians. (R.pp. 15-16); see (R.pp. 75-79). See also Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more



restrictive than the exertional levels suggested by the State Agency examiner]; Silver v. Colvin, No.

11-303, 2014 WL 4160009 at * 5 (M.D.NC. Aug. 19, 2014) [Same]; cf. Muir v. Astrue, No. 07-727,

2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more

restrictive RFC than the medical records provided].

   Therefore, this claim is without merit.

### III.

### (Abdominal Pain)

   Plaintiff also complains that the ALJ failed to properly consider how her

gastrointestinal impairment affects her RFC.  As correctly noted by the Plaintiff, her medical records

do contain complaints of abdominal pain over the course of her medical history, and the ALJ did find

that Plaintiff suffers from proctitis (an inflammation of the lining of the rectum), which can cause

cramping and abdominal pain, even assigning this ailment the status of a severe impairment.  (R.p.

13).  However, there is no evidence that Plaintiff had abdominal pain that was of a disabling severity,

or that this complain affected her ability to perform the sedentary jobs identified by the Vocational

Expert with the limitations assigned by the ALJ.  Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.

1986) [The mere presence of impairments does not automatically entitle a claimant to disability

benefits, there must be a showing of related functional loss]; Andreolli v. Comm'r of Soc. Sec., 2008

WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["It is well settled that a claimant need not be pain-free

or experiencing no discomfort in order to be found not disabled" (citing Welch v. Heckler, 808 F.

2d at 270)]; see also Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26,

2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which

his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx.



795 (4th Cir. 2012).

The symptoms of proctitis are ineffectual straining to empty the bowels, diarrhea, rectal bleeding and possible discharge, a feeling of not having adequately emptied the bowels, and voluntary spasms and cramping due to bowel movements, left-sided abdominal pain, passage of mucus through the rectum and anal rectal pain. http://www.webmd.com/digestive-disorders/proctitis, November 21, 2014.  However, while, as discussed herein, supra, Plaintiff has proctitis, her medical records consistently reflect that on examination her abdomen was found to be non-distended, that she consistently had no complaints of nausea, vomiting, diarrhea or constipation, and that Plaintiff was able to empty her bladder without dysuria and with no complaints of frequency or urgency.  The only problem generally noted in these records is that on occasion (but not always) Plaintiff was found to be "mildly tender" in the right upper quadrant of her abdomen.  See generally, (R.pp. 466-469, 473-478, 481-485, 492, 494-497, 578-583, 647, 719-720).  Further, on her visit to the ER on May 31, 2011 where she was complaining of "cramping", it was specifically noted that Plaintiff's pain was "mild and did not significantly alter [her] daily routine".  (R.p. 492).

While the ALJ acknowledged Plaintiff's complaint of abdominal pain in her decision, there is nothing in Plaintiff's medical records to show an impairment that would restrict her from performing the restricted range of sedentary jobs listed in the decision, or with the functional limitations and requirements set forth in Plaintiff's RFC.  See Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment].  The ALJ reviewed the entire record and assigned Plaintiff the RFC she found warranted and established by the evidence in this case; Abez Velez v. Sec't of HHS, No. 92-2438, 1993 WL 177139, at * 7 (1st Cir. May 27, 1993) [Proper for ALJ to draw inferences from the evidence]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at *



7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing <u>Kasey v. Sullivan</u>, 3F.3d 75, 79 (4th Cir. 1993); and although Plaintiff apparently believes the ALJ should have discussed how her abdominal pain would limit her RFC, the ALJ is not required to address a limitation she did not find the claimant even has.  <u>See</u> <u>Lee v. Sullivan</u>, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; <u>see also</u> <u>Trenary v. Bowen</u>, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; <u>Gross</u>, 785 F.2d at 1166 [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

Plaintiff has failed to establish how this complaint affects her RFC, or to show error by the ALJ in her findings and conclusions.  <u>Plummer v. Astrue</u>, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], <u>adopted by</u> 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).  This claim is therefore without merit.

## IV.

### (Sweets Syndrome)

Plaintiff's argument concerning her having Sweets Syndrome is a little confusing, as Plaintiff both acknowledges that the ALJ addressed her Sweets Syndrome in the decision and found that this was not a severe impairment; (R.p. 13); but then complains that the ALJ did not specify whether or not Sweets Syndrome was a "non-severe" impairment or discuss whether Sweets Syndrome caused her any functional limitations.



Sweets Syndrome is a skin condition that can cause skin lesions that can be painful. It is commonly treated by Prednisone, with signs and symptoms often disappearing just a few days after treatment begins, although recurrences can occur. http://www.mayoclinic.org/diseases-conditions/sweets-syndrome/, December 13, 2012. In this case, while Plaintiff's medical records do reflect that on occasion she would complain of having skin rashes (among various other complaints for which she was seen by medical personnel), there is no indication in her medical records (nor did the ALJ find) that this was in any way a severe or disabling condition or caused Plaintiff any functional limitations. (R.p. 15). The undersigned can discern no error in the way the ALJ considered the medical evidence of this condition in conjunction with the other evidence of record.

Although Plaintiff complains in her brief that the ALJ failed to address in her RFC findings any functional limitations that might be caused by Sweets Syndrome, it is unclear what more the Plaintiff would have had the ALJ do. She specifically discussed the medical evidence and records on which her findings were based (and which support the RFC assigned in the decision); moreover, it appears the ALJ gave Plaintiff every benefit of the doubt by placing further restrictions on her abilities than were documented in the objective evidence. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir.1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]. The ALJ made specific findings with respect to Plaintiff's RFC and addressed what evidence those findings were based on and why, and (as was the case with Plaintiff's claim regarding her abdominal problems) Plaintiff's argument that the ALJ should have gone into even greater detail with respect to Sweets Syndrome in order to discuss an impairment or



restriction the ALJ did not even find existed is without merit. Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C.2002); Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; see also Dryer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision].

There is nothing in the record cited and discussed hereinabove which would warrant this Court overturning the ALJ's RFC decision in this case because she did not discuss functional limitations due to Plaintiff having Sweet's Syndrome. Trenary, 898 F.2d at 1364 [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]. This claim of error is therefore without merit. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Poling, 2001 WL 34630642, at * 7 ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"]; Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; see also Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009)[Noting well established principle of taking ALJ at his word when he indicates he considered all of the evidence].

## V.

### (Credibility Determination)

With respect to Plaintiff's final contention, that the ALJ committed reversible error in her evaluation of Plaintiff's subjective testimony and credibility, this argument is also without merit. The ALJ specifically discussed Plaintiff's testimony and concluded that Plaintiff did have



medically determinable impairments that could reasonably be expected to cause the symptoms Plaintiff alleged. (R.p. 14). However, while concluding that Plaintiff's subjective complaints "may have some merit", the ALJ further found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent inconsistent with the RFC set forth in the decision. (R.pp. 14-15). In reaching this conclusion, the ALJ noted that she had considered Plaintiff's testimony including that Plaintiff had described daily activities beyond what would normally be expected of one as limited as Plaintiff claimed, as well as the medical records and evidence previously discussed which fail to document impairments or limitations of the severity or as limiting as Plaintiff claimed. (R.pp. 34-35, 40-43). That is exactly what the ALJ supposed to have done. See SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Further, when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d 595 ["Although a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by



the Plaintiff.  Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96–7p.]; Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) ["[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (citation omitted)].

In sum, the ALJ did not conduct an improper credibility analysis, nor does her decision otherwise reflect a failure to properly consider the affect Plaintiff's impairments had on her ability to work.  Rather, the record and evidence cited by the ALJ provides substantial evidence to support the ALJ's findings as to the extent of Plaintiff's limitations, and the undersigned can therefore find no reversible error in the ALJ's evaluation of Plaintiff's subjective testimony.  Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not



mandate a finding of disability]. While Plaintiff seeks to have this Court give precedence to her testimony as opposed to the other evidence of record and substitute its own judgment for that of the ALJ, that is not the proper standard for review in a Social Security case. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Guthrie, No. 10-858, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."].

Therefore, this argument is without merit. Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the



Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 29, 2015
Charleston, South Carolina

25



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

